IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAMEON COLE, R13404,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01314-SMY-RJD |
| ) | |
| **DR. COE and THE WARDEN OF** ) | |
| **LAWRENCE CORRECTIONAL** ) | |
| **CENTER,** ) | |
| ) | |
| **Defendants.** ) | |

## **MEMORANDUM AND ORDER**

YANDLE, District Judge:

Plaintiff Dameon Cole is an inmate with the Illinois Department of Corrections ("IDOC") and brought this action alleging that she is being provided inadequate medical care in violation of her constitutional rights. Cole is a transgendered individual and is currently receiving sex reassignment therapy to transition from male to female. She initiated this action on November 17, 2014 by filing a Petition for Preliminary Injunctive Relief with then co-plaintiff Jarvis Postlewaite. *See Postlewaite v. Godinez, et al.,* 3:14-cv-01281-JPG-PMF (S.D. Ill). The Court later severed Cole's claims to create the instant case.

On December 12, 2014, Cole filed her First Amended Complaint (Doc. 6). The First Amended Complaint was screened by Judge Gilbert pursuant to 28 U.S.C. § 1915A on January 29, 2015[1] (Doc. 10). In the screening order, Judge Gilbert held that Cole articulated a colorable Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Coe for failing to provide adequate treatment in regards to Cole's sex reassignment therapy. Because Cole also seeks injunctive relief, the Warden of Lawrence Correctional Center ("Lawrence") was

---

[1] This case was initially assigned to Judge Gilbert and Magistrate Judge Frazier. It has since been reassigned to Judge Yandle and Magistrate Judge Daly.

1

added as a defendant in their official capacity. Dr. Coe and the warden now seek summary judgment (Docs. 31 and 34). Cole did not file a response to either motion. For the following reasons, the motions are hereby **GRANTED**.

## BACKGROUND

Cole entered IDOC custody in 2010 (Doc. 32-2, p. 10). According to the IDOC "Offender Search" website, she has a mandatory supervised release (parole) date of December 5, 2016.[2] Cole was also in IDOC custody from 2002 to 2009 on another unrelated conviction.

Cole stated at her deposition that she has experienced gender identity issues since she was about 15 years old (Doc. 32-2, p. 11). The gender dysphoria issue is also complicated by the fact that Cole has a history of depression, suicidal ideation and at one point was hospitalized for psychiatric reasons (Doc. 32-2, pp. 8-9). Cole began receiving treatment for her gender dysphoria at Lawrence in 2012 (Doc. 32-2, p. 11). Around this time period, Cole notified Lawrence healthcare staff that she was experiencing suicidal ideations associated with her gender identity issues. *Id*. Her healthcare file was then reviewed by the IDOC "Gender Identity Disorder Committee" to determine whether Cole was a suitable candidate for sex reassignment therapy (Doc. 32-2, p. 15).

The Gender Identity Disorder Committee eventually approved Cole for gender dysphoria treatment and she began sex reassignment related counseling sessions in January 2014. *Id*. Cole completed the one-on-one counselling sessions and was prescribed hormone therapy on July 2, 2014 by Dr. Coe (Doc. 32-2, p. 16, Doc. 32-4, p. 1). The medication consisted of two milligrams of Estradiol (female hormone) twice per day and 50 milligrams of Aldactone (medication that suppresses testosterone) twice per day. *Id*. Aside from a brief period of experimentation with street drugs in 2009, this was the first time that Cole had ever used hormone therapy (Doc. 32-2,

---

[2] See https://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx, (last accessed November 15, 2016).

p. 13). In the latter half of 2014, Cole was also taking asthma medication and Depakote (bipolar disorder medication) (Doc. 32-4, p. 1, Doc. 32-5, p. 1).

Cole's medical records indicate that on July 20, 2014, she was examined by a nurse at the Lawrence Health Care Unit ("HCU") for dry skin (Doc. 32-6, p. 1). Cole's next appointment at the HCU occurred on September 11, 2014 after she complained of hip pain (Doc. 32-7, p. 1). A nurse examined Cole on that date and Cole was seen by Dr. Coe for a follow up appointment on September 16, 2014 (Doc. 32-8, p. 1). Dr. Coe and Cole discussed the hip pain issue, Cole's dry skin and Cole's concerns regarding HIV exposure. *Id*. At the examination, Cole had a weight of 255 pounds, blood pressure of 120/66 and a pulse of 76. *Id*.

On October 9, 2014, Cole was examined by a nurse at the HCU after she complained of cold symptoms (Doc. 32-9, pp. 1-2). Medical records indicate that Cole was prescribed acetaminophen. *Id*. She was then examined by Dr. Coe on October 22, 2014 after her cold symptoms persisted (Doc. 32-10, pp. 1-2). Dr. Coe prescribed Guafenesin and Coldonyl. *Id*. Cole then returned to the HCU on November 18, 2014 for a visit at the asthma chronic clinic (Doc. 32-11, p. 1). Cole's vital signs were taken at the asthma clinic noting a height of 6' 00", weight of 244 pounds and a blood pressure of 110/70. *Id*. On November 21, 2014, Cole submitted a request to have a blood test performed to review her hormone levels (Doc. 32-12, p. 1). The nurse reviewing the request discussed it with Dr. Coe and Dr. Coe told the nurse that Cole would be seen in February 2015. *Id*.

At her deposition, Cole stated that around November, 2014, an issue arose where the nurses would not bring her the hormone medication (Doc. 32-2, p. 17). As a result, Cole decided to go on a hunger strike. IDOC records indicate that she declared a hunger strike on November 30, 2014 (Doc. 32-13, p. 1). Cole was also in the Lawrence segregation unit at the time and

notes that during period, there were problems between the inmates and staff (Doc. 32-2, p. 17). Specifically, Cole testified during her deposition that "there was [a] big thing going on in segregation with the officers and the inmates and them playing with food trays and playing with the meals and playing with grievances. And it just got to the point to where I needed to talk to somebody. So I went on a hunger strike." *Id*. Sometime later, the Health Care Unit Administrator visited Cole to discuss her concerns and the medication issue was corrected a few days after their discussion. (Doc. 32-2, pp. 17-18). In total, Cole estimates that she was without her hormone medication for about three weeks (Doc. 32-2, p. 32). However she also admits that she has no information that would indicate that Dr. Coe was aware of or involved in the three week lapse of medication (Doc. 32-2, p. 38).

Additionally, Cole stated at her deposition that there are possible side effects associated with hormone therapy and that she was aware of the possible side effects prior to starting therapy (Doc. 32-2, p. 18). Those side effects include a heightened risk of hypertension, blood clots, elevated liver enzymes, breast cancer, weight gain and others. *Id*. When the deposition was taken (January 27, 2016), Cole stated that she had not experienced the negative side effects from hormone therapy, but that she had started to develop feminine physical characteristics and that she was happy with her physical progression (Doc. 32-2, p. 22).

In addition to monetary damages, Cole seeks injunctive relief in this lawsuit. Specifically, She would like to be transferred to another prison and for Dr. Coe to be replaced by a different physician more knowledgeable in the area of gender dysphoria (Doc. 32-2, p. 37).

## **DISCUSSION**

Rule 56(a) of the Federal Rules of Civil Procedure states in part that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

4

fact and the movant is entitled to judgment as a matter of law." At this stage of the litigation, the Court views the record in a light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Rosario v. Brawn*, 670 F.3d 816, 820 (7th Cir. 2012). When presented with a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

Cole asserts that Dr. Coe has been deliberately indifferent to her serious medical needs in violation of the Eighth Amendment. The Supreme Court has held that the "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). In order to establish an Eighth Amendment deliberate indifference claim to medical needs claim, the prisoner plaintiff must demonstrate that (1) she suffered from an objectively serious medical condition and (2) that the defendants were deliberately indifferent to it. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

A medical condition may be considered objectively serious "if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). The "deliberate indifference" component requires a "sufficiently culpable state of mind." *Arnett*, 658 F.3d at 751. This is a less demanding standard than purposeful, but it requires more than ordinary medical malpractice negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). A prisoner who receives some treatment can still

establish deliberate indifference so long as the treatment received is "blatantly inappropriate." *Id*. (*quoting Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)). Additionally, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Dr. Coe argues that his actions did not constitute deliberate indifference. The Court agrees. Gender dysphoria is undoubtedly a serious medical condition, *see Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011), but Cole has received consistent medical care and attention. While Dr. Coe has not performed as many follow up examinations as Cole would like, the "Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Moreover, Cole has not demonstrated that she has been harmed by the infrequency of the follow up examinations.

Cole admitted at her deposition that she has not experienced any of the negative side effects associated with hormone therapy. Without some sort of injury or at a minimum, an increased risk of injury, *see Henderson v. Sheahan*, 196 F.3d 839, 851 (7th Cir. 1999) (prisoner plaintiff could obtain monetary damages for future risk of harm, but must demonstrate "to a degree of reasonable medical certainty" actual medical risk existed), Cole cannot proceed on her Eighth Amendment claim. Cole does state that she was without her hormone medication for a three week period around late November, 2014. However there is no evidence in the record to indicate that Dr. Coe was involved with or even aware of the medication lapse. Because Dr. Coe was unaware of the problem, any deliberate indifference claim against him based on the medication lapse would fail. Dr. Coe is therefore entitled to summary judgment.

Turning now to Cole's request for injunctive relief, because she has not filed a response to the defendants' motions for summary judgment, it is unclear whether there is any ongoing Eighth Amendment violation that would entitle Cole to such relief. Admittedly, Cole has not suffered any of the negative side effects associated with hormone therapy and she is happy with her physical progress. As such, no reasonable jury could find that she is suffering from an ongoing Eighth Amendment violation. Moreover, the IDOC "Offender Search" website states that Cole is now located at Dixon Correctional Center and that she is scheduled to be released from IDOC custody within the next month or so. Because it is unlikely that she will be transferred back to Lawrence, her request for injunctive relief as to that facility is now moot. See *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Thus, Defendant Warden of Lawrence, added in his official capacity, is also entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by Dr. John Coe and the Warden of Lawrence Correctional Center are granted.

**IT IS SO ORDERED.**

**DATED:  November 17, 2016**

**s/ Staci M. Yandle**  
**STACI M. YANDLE**  
**United States District Judge**
